IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**MICHELLE DAY, ADMINISTRATOR**
**OF THE ESTATE OF JAMES AVERY**
**DEWEESE, SR. AND ON BEHALF OF**
**THE WRONGFUL DEATH BENEFICIARIES**
**OF JAMES AVERY DEWEESE, SR., RUTH**
**DEWEESE, INDIVIDUALLY, and MICHELLE**
**DAY INDIVIDUALLY**                                                                 **PLAINTIFFS**

v.                                      Case No. 4:14-cv-00342 KGB

**UNITED STATES OF AMERICA**                                              **DEFENDANT**

## OPINION AND ORDER

On June 9, 2014, plaintiff Michelle Day filed this action for medical injury against defendant the United States of America. This action was filed under the Federal Tort Claims Act, codified at 28 U.S.C. § 2671, *et seq.*, and is prosecuted in substance under the Arkansas Medical Malpractice Act, codified at Ark. Code Ann. § 16-114-201, *et seq.* Ms. Day alleges that the failure to diagnose hepatocellular carcinoma ("HCC" or "liver cancer") of James Avery Deweese, Sr., on October 31, 2011, at the John L. McClellan Memorial Veterans Hospital in Little Rock, Arkansas, prematurely caused his death in July 2013 (Dkt. No. 1, ¶¶ 6-9). She states claims under Arkansas's medical negligence and wrongful death laws (Dkt. No. 1, ¶¶ 35-41, 42-45).

Now before the Court is the government's motion for summary judgment (Dkt. No. 42), to which Ms. Day has responded (Dkt. No. 49) and the government has replied (Dkt. No. 58). For the reasons set forth below, the Court grants the government's motion for summary judgment as to Ms. Day's Arkansas medical negligence claims only (Dkt. No. 42). Ms. Day's

medical negligence claims are dismissed with prejudice. Based on the following analysis, however, the Court orders further briefing on Ms. Day's claims brought under the Arkansas wrongful death statute.

## I. Factual Background

Unless otherwise noted by citation, the following facts are taken from the government's statement of undisputed facts in support of its motion for summary judgment (Dkt. No. 44) and Ms. Day's response thereto (Dkt. No. 51).

James Avery Deweese, Sr., was born on January 22, 1936, and was first approved for home-based primary care by Central Arkansas Veterans Healthcare System ("CAVHS") in August 2009 (Dkt. No. 44, Ex. A). At that time, Mr. Deweese suffered from diabetes mellitus, diabetic peripheral neuropathy, chronic kidney disease, cirrhosis, hypertension, degenerative joint disease, chronic back pain, anxiety, and depression, among other ailments (*Id.*). Mr. Deweese was seen at his home regularly by the home-based primary care team at CAVHS, led by Advanced Practical Nurse Rose Ann Hodges (*Id.*). Laboratory results revealed elevated liver function tests, which led to a computerized tomography ("CT") on October 31, 2011 (*See* Dkt. No. 44, Ex. B). While the radiologist who read the scan noted stable cirrhosis of the liver, nothing else was identified at that time (*Id*. at 2).

On July 7, 2013, Mr. Deweese presented to the emergency room at CAVHS in Little Rock, Arkansas. Mr. Deweese complained of increased urination, painful urination, incontinent episodes, and suprapubic pain. His wife reported disorientation, confusion, and slurred speech. Mr. Deweese was admitted to the hospital for further testing. Among the tests performed on Mr. Deweese upon admission, Mr. Deweese received an ultrasound of the liver on July 8, 2013, during which a suspicious mass was identified in the left lobe of the liver. A CT scan was

performed on July 12, 2013, revealing a mass measuring 11.8 x 9 x 12.6 centimeters in size (*Id.* at 10-12).

Upon comparing that finding to the October 2011 scan, the radiologist noted that the mass was retrospectively present in October 2011, measuring 6.4 x 4.7 x 6.3 centimeters at that time (*Id.* at 10). Mr. Deweese was placed on palliative care and died on July 22, 2013. Post mortem, a limited autopsy of the liver revealed hepatocellular carcinoma in a severely cirrhotic liver. The immediate cause of death was not apparent from the autopsy limited to a single organ.

In support of her medical negligence claims, Ms. Day alleges that, had the liver cancer been diagnosed in October 2011, Mr. Deweese would not have died on July 22, 2013. In support of her claims, Ms. Day designated Frederick Bentley, M.D., and James Stark, M.D., as expert witnesses in this case. Dr. Bentley is a general surgeon practicing in Little Rock, Arkansas, who has been trained in organ transplants of the liver, kidney, and pancreas.

Dr. Bentley testified that not all liver cancer patients are candidates for transplant because there are a limited number of liver donors, and, therefore, medical criteria has been established to determine which patients may receive donor livers for the best possible outcome. In October 2011, to be a candidate for a liver transplant for HCC, if a patient had only one malignant mass, that mass had to be less than five centimeters in dimension. Mr. Deweese had a single malignant mass in the liver in October 2011, measuring 6.4 centimeters in greatest dimension. Dr. Bentley testified that, even if Mr. Deweese's cancer had been diagnosed in October 2011, treatment by liver transplant would not have been available to him (Dkt. No. 51, at 7).

Dr. Bentley also testified that Mr. Deweese could not have tolerated a surgical resection in October 2011. According to Dr. Bentley, there was evidence Mr. Deweese had portal hypertension and low platelet count in October 2011, which are risk factors for this type of

surgery. Dr. Bentley further testified that Mr. Deweese was 75 years of age and had a sedentary lifestyle. As of October 2011, Mr. Deweese suffered from diabetes, chronic kidney disease, diabetic neuropathy, cirrhosis, hypertension, degenerative joint disease, hypothyroidism, anxiety, and depression, among other ailments. Dr. Bentley testified that both Mr. Deweese's portal hypertension and his low functional status ruled him out as a candidate for resection surgery. Dr. Bentley further stated that surgical removal of liver cancer is the only curative treatment for this disease; all other treatments are palliative.

Mr. Deweese lived for 21 months past the date Ms. Day claims the cancer should have been diagnosed. Dr. Bentley testified that, if Mr. Deweese had been treated by alternative therapy, it could not be stated to a reasonable degree of medical certainty that the alternative therapy would have extended Mr. Deweese's life past July 2013.

## II.     Legal Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact in dispute and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then

shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III.     Analysis

In the instant case, Ms. Day's complaint alleges that, but for the radiologist missing the liver mass on October 31, 2011, Mr. Deweese would not have died in July 2013.  Ms. Day brings her claims under the Arkansas medical negligence and wrongful death laws.  In support of her claims, Ms. Day has proffered the opinions and anticipated testimony of two medical experts: Dr. Bentley, a general surgeon in Little Rock, Arkansas, and Dr. Stark, an oncologist in Norfolk, Virginia.  The government argues that neither of Ms. Day's experts can opine within a reasonable degree of medical certainty that, but for the mistake allegedly made by the radiologist on October 31, 2011, Mr. Deweese would have lived longer than the 21 months he did live past the alleged missed diagnosis.

#### A.     Medical Negligence Under Arkansas Law

To succeed on an action for medical injury under the Federal Tort Claims Act, codified at 28 U.S.C. § 2671, *et seq.*, and prosecuted in substance under the Arkansas Medical Malpractice Act, codified at Ark. Code Ann. § 16-114-201, *et seq.*, Ms. Day must prove the applicable standard of care and a deviation therefrom, unless the asserted negligence is a matter of common knowledge.  Ark. Code Ann. §16-114-206(a)(1)-(2).  The government has stipulated that a mistake was made by failing to visualize the mass on October 31, 2011, and that this failure fell below the standard of care (Dkt. No. 33).  Based upon this stipulation, the Court and the parties

agree that, based on this medical negligence claim, proximate cause remains the only triable issue in this case.

The Arkansas Medical Malpractice Act states that:

In any action for medical injury, when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge, the plaintiff shall have the burden of proving:

By means of expert testimony provided only by a qualified medical expert that as a proximate result thereof the injured person suffered injuries that would not otherwise have occurred.

Ark. Code Ann. §16-114-206(a)(3).

The Arkansas Supreme Court has held that expert opinions by medical care providers are to be stated within a reasonable degree of medical certainty. *Young v. Gastro-Intestinal Ctr., Inc.*, 205 S.W. 3d 741, 745 (Ark. 2005); *Ford v. St. Paul Fire & Marine Ins. Co.*, 5 S.W. 3d 460, 462-63 (Ark. 1999); *Montgomery v. Butler*, 834 S.W.2d 148, 154 (Ark. 1992); *Aetna Casualty & Surety Co. v. Pilcher*, 424 S.W. 2d 181, 185 (Ark. 1968).  The Arkansas Supreme Court has also held that the Arkansas Medical Malpractice statute implements the traditional standard that, but for the tortfeasor's negligence, the plaintiff's injury or death would not have occurred.  *Ford*, 5 S.W. 3d at 462-63.  Possibilities are not enough.  *Id*; *Flentje v. First Nat'l Bank of Wynne*, 11 S.W. 3d 531 (Ark. 2000).  Based upon this standard, the Court turns to examine the government's motion for summary judgment and Ms. Day's response.

### 1.     The Opinions Of Dr. Frederick Bentley

Based upon the undisputed facts in this case and the written report and deposition testimony of Dr. Bentley, the Court determines that, on the summary judgment record before it, Dr. Bentley has not stated within a reasonable degree of medical certainty that, but for the alleged mistake made on October 31, 2011, Mr. Deweese would have survived past July 2013.

At the outset, Dr. Bentley stated in his deposition that the size of Mr. Deweese's tumor in October 2011 was 6.4 centimeters in greatest dimension and that the national guidelines provide that a person generally cannot be a candidate for a liver transplant for HCC unless the tumor is less than five centimeters in diameter (Dkt. No. 44, Ex. E at 15-16).  Based on Dr. Bentley's expert opinion and his testimony regarding the national guidelines, the Court finds that, on the record before it, no triable issue exists as to whether the government's alleged conduct in October 2011 was a proximate cause of Mr. Deweese being able to receive a liver transplant.  Stated another way, Ms. Day has not presented sufficient evidence to present a triable case that, but for the government's alleged conduct in October 2011, Mr. Deweese would have received a liver transplant and survived past July 2013.

In addition to liver transplants, Dr. Bentley also addressed liver resection, which this Court will examine in some detail in connection with its examination of Dr. Stark's proffered opinions, *infra*.  For the reasons set forth, the Court concludes based on this record that there is no triable issue as to whether the government's alleged conduct in October 2011 was a proximate cause of Mr. Deweese being able to receive a liver resection.

Further, Dr. Bentley addressed other palliative treatments.  Specifically, Dr. Bentley stated:

> Q.   Sure. Had he been treated by this alternative therapy in October of 2011, it really cannot be stated to a reasonable degree of medical certainty that the alternative therapy would have extended his life past July of 2013?
>
> A.   I'd say that's --
>
> Q.   Is that fair?
>
> A.   -- that's correct. One would only have to have done it and seen what happened.

(*Id*. at 24-27).

Based upon Dr. Bentley's testimony and the record before the Court, the Court finds that Dr. Bentley's testimony regarding alternative treatments establishes that there is no triable issue as to whether the government's alleged conduct in October 2011 was a proximate cause of Mr. Deweese's being able to receive palliative care to have extended his life past July 2013. Dr. Bentley's proffered opinion does not meet the threshold necessary to submit to the factfinder the issue of proximate causation or for Ms. Day to maintain a triable claim under the Arkansas medical negligence statute on this theory. Ms. Day has not presented sufficient evidence that, but for the government's alleged conduct in October 2011, Mr. Deweese would have received palliative care and survived past July 2013.

To the extent Ms. Day alleges a medical negligence claim that, but for the government's alleged conduct in 2011, Mr. Deweese could have received palliative care to lessen any alleged pain he suffered through July 2013, on the record before the Court, Ms. Day presents insufficient medical expert testimony on this point to survive the government's motion for summary judgment as to the medical negligence claim. At this time, and for the reasons explained in this Order, the Court reserves a determination on the wrongful death and survival claims based on this theory.

### 2. Opinions Of Dr. James Stark

Ms. Day also argues that her other expert witness, Dr. Stark, "offered testimony that demonstrates that issues of fact exist as to whether a liver resection at the time of the 2011 CT scan would have resulted in preventing or delaying Mr. Deweese's death." (Dkt. No. 50, at 6).

The Court notes that Dr. Stark offers no written opinion about the possibility, or lack thereof, of Mr. Deweese receiving a liver transplant (Dkt. No. 44, Ex. F, at 20). Dr. Stark did state in his written expert report that he could not state within a reasonable degree of medical

probability that had the cancer been discovered in 2011 that Mr. Dewesese could have been cured with resection (*Id.* at 34, 38).  Moreover, Dr. Stark did not address in his written expert report any other alternative treatments or palliative care (*Id.* at 20).  Therefore, the Court determines that, in his written opinions, the only opinion offered by Dr. Stark relates to a potential liver surgical resection.  Ms. Day relies on the following statement made by Dr. Stark during his deposition:

> A. Number two is that I believe that had he been operated on in 2011, either had -- either by having his tumor removed or by having a liver transplant, if one were available, he would have had a substantial possibility of a better outcome with the kind of survival statistics that I cited earlier, not a probability of survival, but certainly a robust possibility of being cured of this disease.
>
> Q. And tell me, go back and be explicit, if you would, the percentage of the probabilities in this situation, even though you've said it to Mrs. Lorence.
>
> A. Right. I think probably realistically with resection and, you know, recovering and leaving the hospital, about a 30 percent chance of being cured of his cancer.
>
> Q. And what do you mean by resection?
>
> A. Having that portion of his liver which contained the tumor removed at surgery.
>
> A. Yes.

(*Id.* at 37).

The Court determines that this statement does not meet the threshold necessary to make a submissible case regarding proximate causation under the Arkansas medical negligence statute on this theory regarding liver resection.  Ark. Code Ann. § 16-114-206(a)(3).  In Dr. Stark's written expert report, he opined:  "I cannot state to a reasonable degree of medical probability that he would have been cured in 2011 with resection." (Dkt. No. 44, Ex. F, at 34).  His

9

additional opinion that Mr. Deweese could have undergone a resection which would have given him a 30% chance to survive is an opinion not expressed in his written expert report.

Even if the Court were inclined to consider this testimony offered by Dr. Stark, Dr. Stark's testimony that Mr. Deweese may have had a 30% chance of survival with resection surgery is not enough for Ms. Day to make a submissible case. The Court notes that Ms. Day's other expert witness, Dr. Bentley, states that Mr. Deweese could not have tolerated a surgical resection in October 2011 (Dkt. No. 44, Ex. E, at 28). Specifically, in his deposition, Dr. Bentley explained:

> Q. And you go on to state in your opinions that Mr. Deweese would not have tolerated a major liver resection in 2011?
>
> A. That's correct.
>
> Q. And why not?
>
> A. Two big areas. Number one, he had evidence of portal hypertension. I think he had had an endoscopy, to my recollection, somebody had looked into his stomach, and he had evidence of varices, which are dilated veins either in the esophagus or the stomach. And they are the result of portal – of developing portal hypertension.
>
> He also had platelet count on this CBC that varied a little bit, but it was as low as 100,000. And platelet count is used by hepatobiliary surgeons as a surrogate for portal hypertension . . . .
>
> * * *
>
> A. Number two, the other reason was his functional status and comorbidities.
>
> Q. Got you.
>
> A. In making the decision to operate on somebody, to do a big surgery on somebody, the functional status is very important. So how active are they. Are they very sedentary and just, you know, really are sitting around at home mostly. The main reason for that is if you're active, you're constantly stressing your lungs and your heart, so you know that somebody can withstand the physiological stress of surgery.

> His other comorbidities in a man of age 75 were also a concern. But had he had a good functional status, even with those comorbidities, that could have made him a consideration, had he not also had portal hypertension. So, both those areas ruled him out, clearly, in my mind as a candidate for resection therapy.

(*Id.* at 14).

Summary judgment is appropriate where the defendant demonstrates that plaintiff fails to offer requisite expert testimony. *See Hamilton v. Allen*, 267 S.W.3d 627, 634 (Ark. 2007) ("When the defendant demonstrates the plaintiff's failure to produce the requisite expert testimony, the defendant has demonstrated that no genuine issues of material fact exist and is therefore entitled to summary judgment as a matter of law. The moving party is not required to support its motion with affidavits or other materials further negating the plaintiff's claim.") (internal citations omitted); *Robson v. Tinnin*, 911 S.W.2d 246, 250 (Ark. 2005) ("[W]hen expert testimony is required for proof of a plaintiff's claim for medical malpractice, and the defendant demonstrates the plaintiff's failure to produce the requisite expert testimony, then the defendant has demonstrated that no genuine issues of material fact exist for presentation to a jury and is therefore entitled to summary judgment as a matter of law."). Ms. Day has not presented through Dr. Stark or Dr. Bentley's proffered expert opinions and testimony sufficient evidence that, but for the government's alleged conduct in October 2011, Mr. Deweese would have received a surgical liver resection and survived past July 2013. The Court finds that Ms. Day has not provided the requisite expert testimony to show a genuine issue of material fact exists as it relates to proximate cause on her medical malpractice claim prosecuted under Arkansas law.

    **B.**    **Loss of Chance Theory**

Ms. Day advances the theory of a lost chance of survival based upon the testimony of Dr. Stark in an effort to oppose the government's motion for summary judgment on her medical

11

negligence claim in this case (Dkt. No. 50, at 6-8). Ms. Day describes this theory as one that "allows for recovery where a physician's negligence deprives a patient of a chance to recover or survive." (Dkt. No. 50, at 8). This Court acknowledges that other jurisdictions have adopted this theory. However, Arkansas has not explicitly done so. In support of her contention that this Court should adopt the theory and apply it here, Ms. Day relies on testimony from Dr. Stark in which he testifies that Mr. Deweese may have had a 30% chance of survival with resection surgery in 2011. This Court notes that the Arkansas Supreme Court declined to adopt the loss of chance theory in a case with strikingly similar facts to the case at bar. *See Holt v. Wagner*, 43 S.W.3d 128, 132 (Ark. 2001). The government argues that this Court should not adopt the loss of chance theory based upon the fact that no other Arkansas court has explicitly done so to date.

This Court notes that both of the cases upon which Ms. Day relies in support of her arguments urging the Court to adopt the loss of chance theory are older cases. The *Holt* case was decided in 2001; Ms. Day cites nothing more recent under Arkansas law. Based upon this, the Court is not inclined to adopt or apply this theory.

Further, as the government argues, even if the Arkansas Supreme Court had adopted the theory when presented with an opportunity to do so, it clearly would have adopted the "traditional rule." *Id.* at 131-32 ("Indeed, in *Ford v. St. Paul Fire & Marine Ins. Co.*, *supra*, we came close to adopting the traditional rule regarding lost chance of survival, without couching our holding in those terms. *See, e.g.*, *Kilpatrick v. Bryant*, 868 S.W. 2d 594 (Tenn. 1993) (plaintiffs should be required to show that it is more probable than not, that is, greater than 50% that but for the defendant's negligence, plaintiff would have survived.)). Under the "traditional rule," a plaintiff is required to show that, but for the defendant's negligence, the plaintiff would have had a greater than 50% chance of survival or recovery. *Kilpatrick,* 868 S.W. 2d at 599.

Even if this Court were inclined to consider the opinion first offered by Dr. Stark during his deposition, Dr. Stark expressly testified that Mr. Deweese may have had a 30% chance of survival. Thus, even if this Court chose to adopt the loss of chance theory, which it is not, Ms. Day would still not meet her burden of demonstrating a 50% or more chance of survival or recovery under the traditional rule, as the Arkansas Supreme Court indicated it came close to adopting regarding lost chance of survival. *See Holt*, 43 S.W.3d at 132. In other words, even if this Court were inclined to adopt the theory, the government may still be entitled to summary judgment as a matter of law on Ms. Day's medical negligence claim.

### C.     Hepatitis C Argument

Ms. Day also argues in response to the government's motion for summary judgment that her experts raise issues as to whether Mr. Deweese's Hepatitis C was properly treated. The Court rejects this argument, as this argument was not presented in Ms. Day's complaint or her administrative claim (Dkt. No. 1, at 13-21). Further, and as a result, the Court finds that this argument is barred as untimely. The Court also notes that, even if this argument were procedurally properly presented, Ms. Day has not submitted sufficient record evidence to create a genuine issue of material fact that Mr. Deweese had Hepatitis C for any specific period or that the condition was improperly treated. In fact, the medical records before the Court demonstrate that Mr. Deweese's home-based primary care team tested him for Hepatitis C prior to 2013 and that the results of that test were negative (Dkt. No. 44, Ex. 3).

### D.     Wrongful Death Under Arkansas Law

Ms. Day also brings claims under the Arkansas wrongful death statute. A survival action is for the recovery of damages the decedent suffered prior to death. *McDonald v. Pettus*, 988

S.W.2d 9 (Ark. 1999). A wrongful death action is for the recovery of damages the heirs suffered as a result of the decedent's death. *Id.*

In her complaint, for relief, Ms. Day seeks "compensatory damages against the defendant for the wrongful death of James Avery Deweese, Sr., including but not limited to, the grief suffered, as well as the expense of the funeral and other related costs." (Dkt. No. 1, ¶ 44). She also seeks "a judgment for all compensatory damages against the Defendants, including, but not limited to, loss of enjoyment of life, the loss of life, as well as funeral expenses, and related costs against the Defendants in an amount to be determined by the jury, plus cost and all other relief to which the Plaintiffs may be entitled, including, but not limited to, the claims on behalf of the wrongful death beneficiaries of the decedent, and for any and all other damages that the Plaintiffs and beneficiaries are entitled to recover." (Dkt. No. 1, ¶ 45). Ms. Day repeatedly states she is suing under the Arkansas wrongful death statute, although she never cites it. The relief she seeks makes it unclear whether she intends to maintain a survival action, a wrongful death action, or both.

In regard to Ms. Day's wrongful death claim, this Court acknowledges some inconsistency in rulings of the state circuit courts on the issue of whether the damages provision of the Arkansas Medical Malpractice Act vitiates the Arkansas wrongful death statute. This Court relies on prior federal district court decisions in the Eastern and Western Districts that hold that damages recoverable by beneficiaries under the wrongful death act are not inconsistent with the Arkansas Medical Malpractice Act. *See McMullin v. United States*, 515 F.Supp.2d 914 (E.D. Ark. 2007); *Meredith v. Buchman*, 101 F.Supp.2d 764 (E.D. Ark. 2000); *Foncannon v. Phico Insurance Co.*, 104 F.Supp.2d 1091 (W.D. Ark. 2000).

The Court notes that the government has not moved for summary judgment as to Ms. Day's claims brought under the Arkansas wrongful death statute. The Court directs the parties to submit further briefing to the Court on whether or not the wrongful death claims should be dismissed at the summary judgment stage, addressing among other matters specifically whether the proximate cause standard applicable to these claims is the same as the proximate cause standard applicable to medical negligence claims.

### IV. Conclusion

In sum, the Court grants the government's motion for summary judgment on Ms. Day's medical negligence claims under Arkansas law (Dkt. No. 42). These claims are dismissed with prejudice. The Court orders the parties to file supplemental briefing as to why Ms. Day's survival and wrongful death claims should or should not be dismissed. The parties are directed to file their briefs on this issue by 9:00 a.m. Wednesday, June 8, 2016, with responsive filings, if any, to be made by 9:00 a.m. Thursday, June 9, 2016.

So ordered this 7th day of June, 2016.

_____
Kristine G. Baker
United States District Judge